IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**CORONADO COAL CORPORATION,**
**Employer Below, Petitioner**

**FILED**
**February 3, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 25-ICA-268**          (JCN: 2023020331)

**ANTHONY STEWART,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Coronado Coal Corporation ("Coronado") appeals the June 17, 2025, order of the Workers' Compensation Board of Review ("Board"), which reversed the claim administrator's order and found Respondent Anthony Stewart developed right carpal tunnel syndrome ("CTS") as a result of his compensable injury.[1] Mr. Stewart filed a response.[2] Coronado did not file a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

On May 2, 2023, Mr. Stewart was employed by Coronado as a roof bolter and suffered an injury to his right middle, index, and ring fingers when a rock fell on his hand. An x-ray of Mr. Stewart's right hand was performed on May 2, 2023, and revealed fractures of the right index and ring fingers. Mr. Stewart submitted a claim for workers' compensation benefits, and the claim administrator held his claim compensable for a right-hand contusion and right ring finger fracture in an order dated May 3, 2023. On that same date, Mr. Stewart was seen by Luis E. Bolano, M.D., who diagnosed the injury as a closed, displaced fracture of the proximal phalanx of the right ring finger. Dr. Bolano recommended surgery, and Mr. Stewart agreed to proceed with the operation. On May 12, 2023, Mr. Stewart underwent an open reduction and internal fixation of a right ring finger proximal phalanx fracture performed by Dr. Bolano.

---

[1] The Board's order also dismissed Mr. Stewart's request for a right carpal tunnel steroid injection as moot, but Coronado does not challenge this ruling on appeal.

[2] Coronado is represented by Steven K. Wellman, Esq., and James W. Heslep, Esq. Mr. Stewart is represented by Reginald D. Henry, Esq., and Lori J. Withrow, Esq.

On May 25, 2023, June 19, 2023, and July 26, 2023, Mr. Stewart was seen by Dr. Bolano for follow-up appointments. Physical examinations revealed a negative Tinel's test, a negative Phalen's test, and a negative carpal tunnel compression test. Dr. Bolano ordered Mr. Stewart to use a post-operative splint on his right hand and physical therapy. On July 26, 2023, Mr. Stewart was released to full duty work with no restrictions.

On August 10, 2023, Mr. Stewart returned to Dr. Bolano for a follow-up examination and reported an onset of pain and numbness in the palm, thumb, index, and middle fingers of his right hand. A physical examination revealed a positive Tinel's test, a positive Phalen's test, and a positive carpal tunnel compression test. Dr. Bolano assessed Mr. Stewart with a displaced fracture of the proximal phalanx of the right ring finger and right wrist CTS. On August 10, 2023, Dr. Bolano requested authorization from the claim administrator for a right carpal tunnel injection as treatment for Mr. Stewart's right wrist CTS and requested that right CTS be included as a compensable diagnosis.

On August 14, 2023, Randall L. Short, D.O., conducted a physician review. Dr. Short concluded that Mr. Stewart's diagnosis of right CTS should not be included as a compensable condition because the symptoms developed three months after the compensable injury and there had been no injury to his right wrist. On August 16, 2023, the claim administrator denied the request to include right CTS as a compensable condition and denied authorization of a right carpal tunnel steroid injection based upon Dr. Short's physician review.

On September 22, 2023, Prasadarao B. Mukkamala, M.D., performed an independent medical evaluation ("IME") at the request of the claim administrator. Dr. Mukkamala found Mr. Stewart had reached maximum medical improvement ("MMI") for the compensable injury and found a 2% whole-person impairment ("WPI") for range of motion abnormalities in the middle and ring fingers of the right hand. Dr. Mukkamala only diagnosed the fractures, and his report did not address CTS. On September 28, 2023, the claim administrator granted Mr. Stewart a 2% permanent partial disability ("PPD") award. On November 21, 2023, Dr. Bolano issued a diagnosis update and requested that right CTS be included as a compensable diagnosis, but the claim administrator issued an order on November 30, 2023, stating right CTS was previously denied in its decision dated August 16, 2023.

On March 15, 2024, Austin Nabet, D.O., performed an IME of Mr. Stewart at the request of the employer. Dr. Nabet's physical examination revealed a negative Phalen's test, a negative Tinel's test, and a negative carpal tunnel compression test at Mr. Stewart's right wrist. Dr. Nabet found no clinical evidence of right CTS and opined that Mr. Stewart's right upper extremity numbness was due to traumatic neuropathy caused by the crush injury affecting the digital nerves of his right hand. He further opined that Dr. Bolano's request for a right carpal tunnel injection would not be useful because Mr. Stewart did not have right CTS. On April 30, 2024, the claim administrator's grievance board recommended the

claim administrator affirm its decision denying Dr. Bolano's requests to add right CTS as a compensable diagnosis and for a carpal tunnel steroid injection.

On June 20, 2024, Dr. Bolano wrote a letter stating Mr. Stewart developed numbness and tingling in the thumb, index, and middle fingers of his right hand in the distribution of the medial nerve approximately three months after his surgery. Dr. Bolano did not feel that the right CTS was related to the right ring finger injury because Mr. Stewart did not have any numbness at the time the initial trauma occurred. Dr. Bolano requested authorization for a right carpal tunnel injection for diagnostic purposes. Dr. Bolano noted that CTS can arise immediately or post-operatively with any type of hand injury and further noted that, as a hand specialist, it is very common for him to see patients develop nerve compression neuropathy symptoms after a long period of disuse of an extremity and/or in rehabilitation. In light of Mr. Stewart's injury and his post-operative findings, Dr. Bolano felt that it was worthwhile to pursue a diagnostic carpal tunnel injection.

On July 2, 2024, Bruce A. Guberman, M.D., performed an IME at the request of Mr. Stewart. Dr. Guberman reported that Mr. Stewart underwent extensive physical therapy for his finger fractures, but he continued to have range of motion restrictions in the right index, middle, and ring fingers. He also developed sensory loss in the distribution of the right median nerve of his right hand in late July or early August of 2023 and was found to have positive signs of right CTS. Dr. Guberman reported a positive Tinel's and Phalen's sign in the right wrist that was strongly suggestive of right CTS. Dr. Guberman opined that Mr. Stewart developed right CTS as a result of the compensable injury, had not reached MMI for the CTS, but had reached MMI in regard to his right index, middle, and ring finger injuries. Dr. Guberman further found an 8% WPI for range of motion abnormalities in the right index, middle, and ring fingers, and a 6% WPI for right CTS, for a total of 14% WPI for the compensable injury.

On August 15, 2024, the claim administrator authorized Dr. Bolano's August 10, 2023, request for a steroid injection for right CTS. On October 10, 2024, Mr. Stewart returned to Dr. Bolano and received the carpal tunnel injection. On January 28, 2025, Mr. Stewart was seen by Kaylie Tomlinson, APRN CNP, and reported some improvement in his right CTS symptoms following the right carpal tunnel cortisone injection. Mr. Stewart stated he was still experiencing numbness in his right hand and pain with use, and physical examination of the right upper extremity revealed a positive carpal tunnel compression test, a positive Tinel's test, and a positive Phalen's test at the right wrist. APRN Tomlinson requested authorization for another right carpal tunnel cortisone injection.

On February 22, 2025, Dr. Nabet performed a second IME at the request of Coronado. Dr. Nabet found that Mr. Stewart's compensable injury resulted in a right ring finger fracture, status post open reduction and internal fixation; a right index finger closed tuft fracture; and a right long finger soft tissue laceration of the distal digit. Dr. Nabet further opined that Mr. Stewart's right CTS diagnosis was not causally related to the

compensable injury and found he had a total of 3% WPI for range of motion abnormalities in his right index, middle, and ring fingers.

On June 17, 2025, the Board reversed the claim administrator's order and found Mr. Stewart had shown by a preponderance of evidence that he developed right CTS as a result of the compensable injury. It is from this order that Coronado now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

On appeal, Coronado argues the Board was clearly wrong in finding Mr. Stewart's CTS was compensable because it failed to consider the onset of the CTS as well as Mr. Stewart's other non-compensable health conditions. We disagree. "In order for a claim to be held compensable under the Workmen's Compensation Act, three elements must coexist: (1) a personal injury (2) received in the course of employment and (3) resulting from that employment." Syl. Pt. 1, *Barnett v. State Workmen's Comp. Comm'r*, 153 W. Va. 796, 172 S.E.2d 698 (1970); *see also* W. Va. Code § 23-4-1(a) (2008).

First, Coronado argues the Board failed to consider that Mr. Stewart's CTS did not occur contemporaneously with the compensable injury. However, the evidence in the record does show that Mr. Stewart's CTS symptoms developed within three months after the compensable injury, which Dr. Bolano stated is common after a long period of disuse and in rehabilitation. Further, the Board considered the timing of Mr. Stewart's CTS, relied on the absence of evidence of right CTS prior to this injury, and credited Dr. Bolano's opinion, as corroborated by Dr. Guberman, in concluding that the CTS was related to the

4

compensable injury. Coronado failed to cite any evidence in the record to show that the Board's reliance on the opinion of Mr. Stewart's hand surgeon, Dr. Bolano, is clearly wrong.

Next, Coronado argues that the Board failed to consider Mr. Stewart's non-compensable left CTS, his obesity, and his diabetes, which are risk factors for CTS. However, this argument similarly fails because it is not supported by any medical evidence and none of Coronado's medical experts opined that these factors caused Mr. Stewart's right CTS. The Board did consider Dr. Nabet's opinion regarding the contributory role of nonoccupational risk factors to Mr. Stewart's CTS and quoted a large section of Dr. Nabet's report in its order. Instead of finding Coronado's experts to be persuasive, the Board agreed with Dr. Bolano, who stated that Mr. Stewart's CTS was caused as a result of the compensable injury. The Board's order stated that the weight of the evidence supported the finding that Mr. Stewart's CTS was causally related to his compensable injury and found Drs. Short, Mukkamala, and Nabet's opinions less persuasive. Specifically, the Board found Dr. Bolano more persuasive than Coronado's experts because he was a hand surgeon and Mr. Stewart's treating physician, he performed the surgery on Mr. Stewart's right hand, he was actively treating Mr. Stewart since May 3, 2023, and his opinions were corroborated by Dr. Guberman. As the Supreme Court of Appeals of West Virginia has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in finding Mr. Stewart's CTS is a compensable condition.

Accordingly, we affirm the Board's June 17, 2025, order.

Affirmed.

**ISSUED:** February 3, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White